# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JULIANA FONDACARO and MAYRA VERDUZCO, on behalf of themselves and a class of others similarly situated,<br><br>             Plaintiffs,<br><br>    v.<br><br>GERBER PRODUCTS COMPANY, a Virginia corporation,<br><br>        Defendant. | Civ. No.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Juliana Fondacaro of Northvale, New Jersey, and Mayra Verduzco, of Riverbank, California, on behalf of themselves and all others similarly situated, and as against Defendant Gerber Products Company ("Gerber" or "Defendant"), allege the following based upon personal knowledge as to themselves and their own actions and, as to all other matters, investigation of their counsel and information and belief:

## INTRODUCTION

1.    Plaintiffs bring this class action lawsuit because Gerber sold commercial baby foods despite being aware, based on its own internal testing, that many ingredients in those foods contained levels of neurotoxic chemicals such as inorganic arsenic, lead, cadmium, and/or mercury, that are dangerous for babies. Gerber provided internal test results to a Congressional Subcommittee investigating toxic metals in baby foods demonstrating as much. Unfortunately,

this compelled disclosure came much too late because Gerber did not disclose this critical fact to its potential customers.

2.      Babies have very high sensitivity to neurotoxic chemicals from conception through age 2 because "[t]heir brain is forming rapidly, and so when they're exposed to metals that can interrupt those natural processes, the impacts range from behavioral problems to aggression to IQ loss and all kinds of cognitive and behavioral deficits that can persist throughout life."[1] "Pound for pound, babies get the highest dose of these heavy metals compared to other parts of the population . . . [s]o the consequences are serious."[2]

3.      The Food and Drug Administration (FDA) and the World Health Organization (WHO) have declared that inorganic arsenic, lead, cadmium, and mercury are dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects.[3] Even low levels of exposure can cause serious and often irreversible damage to brain development.[4]

4.      Yet, Gerber does not list inorganic arsenic or heavy metals as an ingredient on its products' labels nor does it warn of their potential presence in its products.

5.      As a result, Gerber's labeling is deceptive and misleading.

---

[1] https://www.cnn.com/2021/02/04/health/baby-food-heavy-metal-toxins-wellness/index.html (last visited Mar. 8, 2021) (quoting Jane Houlihan, National Director of Science and Health, Healthy Babies Bright Futures).
[2] *Id.*
[3] *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury,* Staff Report ("**Subcommittee Report**" or "**SR**"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, U.S. House of Representatives, at 11, February 4, 2021, available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (internal citations omitted).
[4] *Id.*

6.     This is a consumer class action brought individually by the Plaintiffs and on behalf of all persons in the below-defined proposed Classes, all of whom purchased one or more of baby foods manufactured by Gerber.[5] The term "**Gerber Baby Food Products**" or "**Products**" used herein refers to the products and/or ingredients found in them as defined in footnote 5.

## PARTIES

7.     Plaintiff Juliana Fondacaro is, and at all relevant times was, a citizen of the State of New Jersey, residing in Northvale, and is a member of certain classes defined below. She can be reached through her counsel at 135 Chestnut Ridge Road, Suite 200, Montvale, New Jersey 07645. In November and December 2020, Plaintiff Fondacaro purchased some Products from Walmart.com including Pasta Primavera; Puree Favorites Variety Pack, Chicken and Gravy, Turkey and Gravy; and 3rd Foods Lil Mixers Baby Food, Carrot Sweet Potato Peas with Quinoa Crisp. Plaintiff relied on the labels on the Products she purchased. She relied on Defendant's omissions and the false and misleading claims, warranties,

---

[5] The Gerber products at issue include: Puree Favorites Variety Pack, Chicken and Gravy, Turkey and Gravy; 3rd Foods Pasta Primavera; 3rd Foods Lil Mixers Baby Food, Carrot Sweet Potato Peas with Quinoa Crisp; Sitter 2nd Foods Macaroni & Cheese; Toddler Yellow Rice & Chicken with Vegetables in Sauce; Lil Meals Macaroni & Cheese with Chicken and Vegetables; Puffs Sweet Potato Cereal Baby Snacks; Sitter 2nd Foods Apple Banana with Oatmeal Cereal; Puffs Banana Cereal Baby Snacks; Lil' Crunchies Mild Cheddar Baked Corn Baby Snacks; Lil' Meals, Pasta Stars with Chicken & Vegetables; Barley Single Grain Cereal; Whole Wheat Whole Grain Cereal-Sitter 2nd Foods; Oatmeal Single Grain Cereal; Barley Single Grain Cereal-Supported Sitter 1st Foods; Diced Carrots Veggie Pick-Ups; Carrot-Sitter 2nd Food; Sweet Potato Supported Sitter 1st Foods; Green Bean-Sitter 2nd Food; Peach-Sitter 2nd Foods; Mango Apple Carrot Kale; Carrot Sweet Potato Pea-Sitter 2nd Foods; Fruit & Veggie Melts-Truly Tropical Blend Freeze-Dried Fruit & Vegetable Snack; Chicken Rice Dinner; and Turkey Rice Dinner (the "**Gerber Baby Food Products**").

representations, advertisements, and other marketing, in making her purchasing decision. She was unaware that the Products contained inorganic arsenic or heavy metals at levels unsafe for babies and would not have purchased the Products or paid as much for them if that information had been disclosed. Plaintiff was injured and lost money by paying for contaminated Products that have no value or whose value was less than what she paid for the products.

8.      Plaintiff Mayra Verduzco is, and at all relevant times was, a citizen of the State of California, residing in Riverbank, and is a member of certain classes defined below. She can be reached through her counsel at 135 Chestnut Ridge Road, Suite 200, Montvale, New Jersey 07645. In August, September, and October 2019, Plaintiff Verduzco purchased some Products from Target including Sitter 2nd Foods Macaroni & Cheese; Toddler Yellow Rice & Chicken with Vegetables in Sauce; Lil Meals Macaroni & Cheese with Chicken and Vegetables; Puffs Sweet Potato Cereal Baby Snacks; Sitter 2nd Foods Apple Banana with Oatmeal Cereal; Puffs Banana Cereal Baby Snacks; Lil' Crunchies Mild Cheddar Baked Corn Baby Snacks; Lil' Meals, Pasta Stars with Chicken & Vegetables. Plaintiff relied on the labels on the Products she purchased. She relied on Defendant's omissions and the false and misleading claims, warranties, representations, advertisements, and other marketing, in making her purchasing decision. She was unaware that the Products contained inorganic arsenic or heavy metals at levels unsafe for babies, and would not have purchased the Products if that had been disclosed. Plaintiff was injured and lost money by paying for contaminated Products that have no value or whose value was less than what she paid for the products.

9.      Defendant Gerber Products Company is a subsidiary of Swiss food giant Nestlé S.A., incorporated in Delaware with its principal place of business at 1812 North Moore Street, Arlington, VA 22209.  Nestlé produces and distributes food and beverage products. Nestlé maintains its U.S. operations in many U.S.

locations through seven operating companies, including Gerber. Gerber produces multiple lines of food and beverages for infants, including formula, supplements, cereal, baby food, snacks, drinks, meals, and organic food. Gerber baby food products can be purchased from the Gerber website (gerber.com) and retail stores.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members, and some of class members are citizens of states different than Defendant.

11.    This Court has personal jurisdiction over Defendant because Defendant regularly sells and market products and conducts business in New Jersey and/or under the stream of commerce doctrine by allowing products to be sold in New Jersey, including the Products at issue here.

12.    Venue is proper in this District because Gerber markets, advertises, distributes, and sells baby food products in this District and a substantial portion of the events complained of took place in this District.  In addition, Plaintiff Fondacaro was at all relevant times a citizen of New Jersey and purchased Defendant's Products in New Jersey.

## FACTUAL ALLEGATIONS

13.    The market for baby foods is exceedingly large and growing.  The baby foods market worldwide is projected to grow by $22.7 billion by the year 2025.[6]

---

[6]https://www.researchandmarkets.com/reports/338658/baby_foods_and_infant_formula_global_market?utm_source=dynamic&utm_medium=BW&utm_code=b559s

14.     Along with the exploding baby food market is a surge in popularity of baby food products that are organic and otherwise "healthy" for babies.[7]

**Defendant Gerber**

15.     Gerber sources, formulates, manufactures, markets, advertises, labels, distributes, and sells the Products at issue in the litigation.

16.     Gerber advertised and continues to advertise the Products through television commercials, print advertisements, point-of-sale displays, product packaging, Internet advertisements, and other promotional materials.

17.     Gerber claims on its website that, "We have among the strictest standards in the world.  From farm to highchair, we go through over 100 quality checks for every jar."[8] It claims that "our farmers are using best in class practices to ensure quality ingredients and minimize the presence of any unwanted heavy metals."[9] It promises that "Gerber takes many steps to keep levels as low as possible"[10] and "[i]f foods don't pass our quality and safety checks, we don't sell them."[11] It emphasizes, "the truth is you would do anything for your baby, and so would we."

18.     Gerber redoubles these promises by telling parents concerned about recent reports about tainted Gerber baby food, "Gerber baby foods are absolutely safe and healthy for your baby."[12]

---

k&utm_campaign=1386712+Global+Baby+Foods+and+Infant+Formula+Market+Assessment+2020-2025&utm_exec=joca220bwd.

[7] *Id.*

[8] https://www.gerber.com/commitment-to-quality (last visited Feb. 8, 2021).

[9] https://www.gerber.com/learning-center/quality-safety-faqs (last visited Feb. 8, 2021).

[10] *Id.*

[11] *Id.*

[12] *Id.*

19.    As alleged in more detail below, these claims and representations are deceptive, misleading, and/or false. Gerber's packaging labels do not list, let alone warn, potential customers that the Products contain inorganic arsenic and/or toxic heavy metals at levels unsafe for babies.

**Toxins Found in Gerber's Baby Food Products**

20.    Arsenic, lead, cadmium and mercury have been linked to cancer, chronic disease, and neurotoxic effects and are listed in the World Health Organization's top 10 chemicals of concern for infants and children.[13] They rank in the top ten on the Center for Disease Control's Agency for Toxic Substances and Disease Registry (ATSDR) Substance Priority List.[14]  The ATSDR lists substances that "based on a combination of their frequency, toxicity, and potential for human exposure" pose significant threat to human health.[15]

21.    Arsenic is ranked at the top of the ATSDR.  "There is some evidence that exposure to arsenic in early life (including gestation and early childhood) may increase mortality in young adults."[16]

22.    The FDA has set the maximum allowable level of inorganic arsenic for human consumption in bottled water at 10 parts per billion ("ppb"), and the EPA, WHO, and European Union have set it at that for drinking water.[17]

---

[13] https://www.who.int/ceh/capacity/heavy_metals.pdf (last visited Feb. 8, 2021).

[14] https://www.atsdr.cdc.gov/spl/index.html (last visited Feb. 8, 2021).

[15] *Id.*

[16] https://www.atsdr.cdc.gov/PHS/PHS.asp?id=18&tid=3#bookmark01 (last visited Feb. 8, 2021).

[17] SR at 13 (citing, Food and Drug Administration, *Arsenic in Food and Dietary Supplements, www.fda.gov/food/metals-and-your-food/arsenic-food-and-dietary-supplements*) (last visited Mar. 8, 2021).

23.     With regard to baby food, the FDA has finalized only one metal standard for one narrow category of baby food, a 100 ppb inorganic arsenic standard for infant rice cereal.[18]

24.     Lead ranks second on the ATSDR list.[19] The American Academy of Pediatrics and the Centers for Disease Control and Prevention state that there is no safe level of lead in children.[20]

25.     Lead is associated with behavioral problems, decreased cognitive performance, delayed puberty, reduced postnatal growth, and is "especially dangerous to infants and young children."[21]

26.     Cadmium is seventh on the ATSDR list,[22] and is associated with decreased IQ and Attention-Deficit/Hyperactivity Disorder (ADHD).[23]

27.     The FDA and Environmental Protection Agency (EPA) limit cadmium to 5 ppb in bottled water and drinking water, respectively, while the WHO limits it to 3 ppb in drinking water.[24]

28.     Mercury is third on the ATSDR list.[25] Among other concerns, "higher blood mercury levels at 2 and 3 years of age were positively associated with autistic behaviors among preschool-age children."[26]

29.     The EPA limits mercury to 2 ppb in drinking water.[27]

---

[18] SR p. 6.
[19] https://www.atsdr.cdc.gov/spl/index.html (last visited Feb. 8, 2021).
[20] https://www.ewg.org/release/congressional-investigation-popular-baby-foods-contain-high-levels-arsenic-lead-cadmium-and (last visited Feb. 6, 2021).
[21] SR at 11 (internal quotations omitted).
[22] https://www.atsdr.cdc.gov/spl/index.html (last visited Feb. 8, 2021).
[23] SR p. 12.
[24] *Id.* p. 29.
[25] https://www.atsdr.cdc.gov/spl/index.html (last visited Feb. 8, 2021).
[26] SR p. 13 (internal citation omitted).
[27] *Id.* p. 32.

30.     All of these are present in the Products in levels well above what is considered safe for babies.

### U.S. House of Representatives and Healthy Babies Reports

31.     In 2019, Healthy Babies Bright Futures, an alliance of nonprofit organizations, commissioned a national laboratory to test baby food products, including Gerber's baby food products, for inorganic arsenic and heavy metals.[28]

32.     The testing found, *inter alia,* that Gerber products contained lead, and/or exceeded standards for inorganic arsenic, cadmium, and mercury that the FDA and/or EPA had set for water.[29]

33.     In 2020, the U.S. House of Representatives began investigating baby food product manufacturers, including Gerber, and concluded that its "investigation proves that commercial baby foods contain dangerous levels of arsenic, lead, mercury, and cadmium" and that "[m]anufacturers knowingly sell these products to unsuspecting parents, in spite of internal company standards and test results, and **without any warning labeling whatsoever.**"[30]

34.     It found that "naturally occurring toxic heavy metal may not be the only problem causing dangerous levels of toxic heavy metals in baby foods; rather,

---

[28] Healthy Babies Bright Futures, *What's In My Baby's Food?* (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLIS H_R6.pdf (last visited Mar. 11, 2021).

[29] *See, infra.* ¶¶ 22-29. Some of the Gerber products that the Healthy Babies investigation found exceeded standards are:  Barley Single Grain Cereal; Whole Wheat Whole Grain Cereal-Sitter 2nd Foods; Oatmeal Single Grain Cereal; Barley Single Grain Cereal-Supported Sitter 1st Foods; Diced Carrots Veggie Pick-Ups; Carrot-Sitter 2nd Food; Sweet Potato Supported Sitter 1st Foods; Green Bean-Sitter 2nd Food; Peach-Sitter 2nd Foods; Mango Apple Carrot Kale; Carrot Sweet Potato Pea-Sitter 2nd Foods; Fruit & Veggie Melts-Truly Tropical Blend Freeze-Dried Fruit & Vegetable Snack; Chicken Rice Dinner; and Turkey Rice Dinner.

[30] SR p. 59 (emphasis added).

**baby food producers . . . are adding ingredients that have high levels of toxic heavy metals into their products**, such as vitamin/mineral pre-mix."[31]

35.    And it highlighted that Gerber only periodically tests its final baby food product, possibly resulting in an undercount of toxic metals in the finished baby food product.[32]

36.    The Subcommittee's investigation revealed the following with respect to Defendant Gerber:

a.    Gerber "demonstrated its willingness to use ingredients that contained dangerous lead levels."[33]

b.    Gerber does not test all its ingredients for cadmium, but of those that it tests, it accepts high levels of cadmium, *e.g.,* 75% of carrots Gerber contained had more cadmium than permitted by the EPA in drinking water.[34]

**Plaintiffs Relied Upon Gerber's Representations**

37.    Plaintiffs were victims of Defendant's omissions, misleading representations and mislabeling of the Products that contained inorganic arsenic and/or heavy metals.

38.    Plaintiffs reasonably relied upon the labels, including omissions therefrom, on Gerber's Products before purchasing them.  The labels stated Products were, *e.g.,* "Non GMO," "inspected for wholesomeness," had no preservatives, "No artificial flavors," "No artificial colors," but did warn that certain products "Contains Wheat, Eggs, and Milk." As such, Plaintiffs purchased

---

[31] *Id.* p. 56 (emphasis added).
[32] *Id.* pp. 55-56.
[33] *Id.* p. 27.
[34] *Id.* p. 32.

Gerber's Products believing they would provide their children with healthy baby food.

  39. Gerber's labeling claims and omissions were a material factor in Plaintiffs' decision to purchase Gerber's Products.

  40. At the point of sale, Plaintiffs did not know, and had no reason to know, that the nutrient content claims on the Products' labels were false, deceitful, and untrue as set forth herein.

  41. Plaintiffs later learned that the Products contained levels of heavy metals and/or inorganic arsenic that are unsafe for babies.  Plaintiffs were deceived as a result of Gerber's false and misleading practices.

  42. Plaintiffs would not have purchased or paid a price premium for Gerber's Products had they known the Products contained or may contain levels of heavy metals and/or inorganic arsenic that are harmful to babies.

  43. Plaintiffs are in the same Class as all other consumers who purchased Defendant's Products during the relevant time period. Plaintiffs and the Class Members were in fact misled by Defendant's omissions and misrepresentations with respect to the Products. Plaintiffs and Class Members would have purchased other foods for their children if they had not been deceived by Gerber's omissions, and the misleading and deceptive labeling of Gerber Baby Food Products.

## CLASS ACTION ALLEGATIONS

  44. Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. Plaintiffs seek certification of the following "**National Class**":

> All persons within the United States who purchased Gerber's Baby Food Products from the beginning of any applicable limitations period through the date of class certification.

45.     Plaintiff Fondacaro ("**New Jersey Plaintiff**") seeks certification of the following "**New Jersey Sub-Class**":

> All persons in the State of New Jersey who purchased Gerber's Baby Food Products from the beginning of any applicable limitations period through the date of class certification.

46.     Plaintiff Verduzco ("**California Plaintiff**") seeks certification of the following "**California Sub-Class**":

> All persons in the State of California who purchased Gerber's Baby Food Products from the beginning of any applicable limitations period through the date of class certification

47.     Unless otherwise stated, the National Class, New Jersey Sub-Class, and California Sub-Class are collectively referred to as "**Classes**" and their members as "**Class Members**."

48.     Plaintiffs reserve the right to amend, alter, modify, or change any of the class definitions, as required by the evidence and permitted by law.

49.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiffs' counsel, their staff members, and their immediate family.

50.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

**Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the tens of thousands. The number of members in the Classes is presently

unknown to Plaintiffs but may be verified by Defendant's business records. Class Members may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

**Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

    a.  Whether Gerber Baby Food Products contain dangerous levels of heavy metals;

    b.  Whether Gerber Baby Food Products contain dangerous levels of inorganic arsenic;

    c.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for Gerber Baby Food Products are deceptive;

    d.  Whether Plaintiffs and Class Members were damaged by Gerber's conduct;

    e.  Whether Gerber was unjustly enriched at the expense of Plaintiffs and Class Members; and

    f.  Whether Plaintiffs and Class Members are entitled to injunctive relief

**Typicality – Federal Rule of Civil Procedure 23(a)(3).** The claims of the named Plaintiffs are typical of other Class Members. All Class Members were comparably injured by Defendant's conduct described above, and there are no defenses available to Defendant that are unique to Plaintiffs or any particular members of the Classes.

**Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**
Plaintiffs are adequate class representatives because their interests do not
conflict with the interests of other Class Members; they have retained class
counsel competent to prosecute class actions and are financially able to
represent the Classes.

**Declaratory and Injunctive Relief – Federal Rule of Civil Procedure
23(b)(2).** Defendant has acted or refuses to act on grounds generally
applicable to Plaintiffs and the other Class Members, thereby making
appropriate final injunctive relief and declaratory relief, as described below,
with respect to the Class Members as a whole. In particular, Plaintiffs seek
to certify a Class to enjoin Gerber from selling or otherwise distributing the
Products until such time that it can demonstrate to the Court's satisfaction
that the Products are accurately labeled.

**Superiority – Federal Rule of Civil Procedure 23(b)(3).**  A class action is
superior to any other means of adjudication for this controversy. It would be
impracticable for members of the Classes to individually litigate their own
claims against Gerber because the damages suffered by Plaintiffs and the
members of the Classes are relatively small compared to the cost of
individually litigating their claims. Individual litigation would create the
potential for inconsistent judgments and delay and expenses to the court
system. A class action provides an efficient means for adjudication with
fewer management difficulties and comprehensive supervision by a single
court.

<u>**CAUSES OF ACTION**</u>
<u>**COUNT I**</u>

**Violations of New Jersey Consumer Fraud Act**
**N.J. Stat. Ann. §§ 56:8-1,** *et seq.*
**(on behalf of the National Class and New Jersey Sub-Class)**

51.     Plaintiffs fully incorporate the preceding paragraphs herein.

52.     New Jersey Plaintiff bring this claim individually and on behalf of the National Class and the New Jersey Sub-Class.

53.     Defendant, the New Jersey Plaintiff, and the Class Members are "persons" within the meaning of N.J. Stat. Ann. §56:8-1(d).

54.     The Products are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

55.     The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unfair trade practices. N.J. Stat. Ann. §56:8-2.

56.     In the course of its business, Defendant, through its agents and employees violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the Products' safety as detailed above.

57.     Specifically, by misrepresenting the Products as safe for consumption by infants and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Products to babies, Defendant engaged in the following unfair and deceptive acts or practices as prohibited by N.J. Stat. Ann. §§ 56:8-2:  using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Products.

58.     Specifically, by mispresenting the Products as safe for consumption by infants and by failing to disclose, or actively concealing, the dangers that inorganic arsenic and/or heavy metals in the Products posed to infants, Defendant engaged in the following unfair or deceptive act or practices as prohibited by N.J. Stat. Ann. § 56:8-2.10:  mispresenting a food or food product by using a

description that is false or misleading, and/or a description that omits information which by its omission renders the description false or misleading.

59.     Defendant's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the New Jersey Plaintiff and Class Members, about the true safety and quality of the Products, and the true value of the Products.

60.     Defendant's scheme and concealment of the true characteristics of the Products were material to the New Jersey Plaintiff and Class Members, as Defendant intended. Had they known the truth, the New Jersey Plaintiff and Class Members would not have purchased the Products.

61.     The New Jersey Plaintiff and Class Members had no way of discerning that Defendant's representations were false and misleading, or otherwise learning the facts that Defendant had concealed or failed to disclose. The New Jersey Plaintiff and Class Members did not, and could not, unravel Defendant's deception on their own.

62.     Defendant had an ongoing duty to the New Jersey Plaintiff and Class Members to refrain from unfair and deceptive practices under the New Jersey CFA in the course of its business. Specifically, Defendant owed the New Jersey Plaintiff and Class Members a duty to disclose all the material facts concerning the Products because Defendant possessed exclusive knowledge, intentionally concealed the true characteristics of the Products from the New Jersey Plaintiff and Class Members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

63.     The New Jersey Plaintiff and Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's concealment, misrepresentations, and/or failure to disclose material information.

64.     A copy of this complaint was mailed to the Attorney General of the State of New Jersey in accordance with N.J. Stat. Ann. § 56:8-20.

65.     Pursuant to N.J. Stat. Ann. § 56:8-19, the New Jersey Plaintiff and Class Members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Jersey CFA.

## COUNT II

### Violations of the California Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*
### (on behalf of the National Class and California Sub-Class)

66.     Plaintiffs fully incorporate the preceding paragraphs herein.

67.     California Plaintiff bring this claims individually and on behalf of the National Class and the California Sub-Class

68.     Defendant is a "person" within the meaning of the UCL. Cal. Bus. & Prof. Code § 17201.

69.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice" as well as any "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

70.     The acts omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute business acts and practices.

71.     Unlawful:  The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws:

a.     The False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

b.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 , *et seq.*

72.    Plaintiffs reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

73.    Unfair:  Defendant's conduct with respect to the labeling, advertising, and sale of the Products was "unfair" because, *inter alia,* Defendant made representations and omissions of material facts regarding the Products in their advertising and labeling. There is no societal benefit, only harm, from false advertising. Defendant was unjustly enriched by their false misrepresentations and omissions, that Plaintiffs and Class Members relied on.  Defendant's conduct was immoral, unethical, unscrupulous, and substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

74.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including but not limited to applicable sections of the False Advertising Law and the Consumers Legal Remedies Act.

75.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

76.    As set forth herein, Defendant's claims relating the ingredients stated on the Products' labeling, and their representations about quality of and ingredient supply, and product manufacturing and oversight, as stated above, are false, likely to mislead or deceive the public.

77.     Defendant profited from the false and deceptive practices and acts by Defendant and the unlawfully advertised and packaged Products to unwary consumers.

78.     California Plaintiff and the Class Members are likely to continue to be damaged by Defendant's deceptive trade practices because Defendant continues to disseminate misleading information on the Products' packaging. Thus, injunctive relief enjoining Defendant's deceptive practices is proper.

79.     Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the Class Members, and they have suffered an injury in fact as a result of Defendant's unlawful conduct.

80.     In accordance with Bus. & Prof. Code § 17203, the Court should enjoin Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

81.     The Class Members seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts in violation of the UCL.

## COUNT III

**Violations of California False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(on behalf of the National Class and California Sub-Class)**

82.     Plaintiffs fully incorporate the preceding paragraphs herein.

83.     Plaintiffs bring this claim individually and on behalf of the National Class and California Sub-Class.

84.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to

19

disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

85.    It is also unlawful under the FAL to disseminate statements concerning personal property that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id*.

86.    The required intent is the intent to dispose of personal property, not the intent to mislead the public in the dispositions of such personal property.

87.    As alleged herein, the advertisements, labeling, policies, acts, practices, and omissions of Defendant relating to the Products misled consumers acting reasonably as to Defendant's representations about quality, ingredient supply, and product manufacturing and oversight, as stated above.

88.    Plaintiffs and the Class Members suffered injury in fact as a result of Defendant's actions as set forth herein because they purchased the Products in reliance on Defendant's false and misleading labeling claims and omissions concerning the Products' quality, ingredient supply, and manufacturing and oversight (among other things), as stated above.

89.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and that omitted material information.

90.    As a direct and proximate result of Defendant's untrue and misleading advertising, California Plaintiff and the Class Members have suffered injury in fact and have lost money.

91.     Defendant profited from the sale of the falsely and deceptively advertised Products to unwary customers.

92.     As a result, California Plaintiff requests that the Court order restitution and disgorgement of the funds by which Defendant was unjustly enriched.

93.     Pursuant to Cal. Bus. & Prof. Code § 17535, the Court should enjoin Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

## COUNT IV

**Violations of California Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750,** *et seq.*
**(on behalf of the National Class and California Sub-Class)**

94.     Plaintiffs fully incorporate the preceding paragraphs herein.

95.     California Plaintiff brings this claim individually and on behalf of the National Class and California Sub-Class.

96.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for family or household purposes by the Class Members, and violated and continue to violate the following sections of the CLRA:

   a.     § 1170(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   b.     § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   c.     § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

97.     California Plaintiff reserves the right to allege other violations.

98.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

99.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

100.    Pursuant to Civil Code § 1782(a), and attached as **Exhibit A**, is a letter concurrently sent by certified mail to Defendant, notifying it of its alleged violations of the CLRA, demanding that Defendant correct such violations, and providing it with the opportunity to correct its business practices. If Defendant does not thereafter correct its business practices, California Plaintiff will amend (or seek leave to amend) the complaint to add claims for monetary relief, including restitution and actual damages under the CLRA.

101.    Pursuant Civil Code § 1780(d), attached as **Exhibit B**, is the affidavit showing that this action has been commenced in the proper forum.

102.    Pursuant to California Civil Code § 1780, California Plaintiff and the Class Members seek injunctive relief, their reasonable attorney fees and costs, and any other relief that the Court deems proper.

## **PRAYER FOR RELIEF**

103.    WHEREFORE, Plaintiffs, individually and on behalf of the other members of the putative classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

a.      Declaring that this action is a proper class action, certifying the putative classes as requested herein, designating Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel for the putative classes;

b.  Ordering Defendant to pay actual damages to Plaintiffs and the other members of the putative classes;

c.  Ordering Defendant to pay restitution to Plaintiffs and the other members of the putative classes;

d.  Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiffs and the other members of the putative classes;

e.  Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiffs and the other members of the putative classes;

f.  Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiffs and the other members of the putative classes, as allowable by law;

g.  Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

h.  Ordering such other and further relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Plaintiffs also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: March 12, 2021                    Respectfully submitted,

/s/ Gary S Graifman
Gary S. Graifman, Esq.

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
135 Chestnut Ridge Road
Suite 200
Montvale, NJ 07645
Telephone: (845) 356-2570

ggraifman@kgglaw.com

/s/ Gayle M. Blatt
Gayle M. Blatt, Esq. (*pro hac vice pending*)

**CASEY GERRY SCHENK FRANCAVILLA BLATT & PENFIELD, LLP**
110 Laurel Street
San Diego, CA  92101
Telephone: (619) 238-1811
gmb@cglaw.com

*Attorneys for Plaintiffs and the proposed classes*

24